IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| KEITH CASEY, § § *Plaintiff*, § § V. § § MARATHON PETROLEUM § COMPANY LP, § § *Defendant.* § | Civ. No. 19-cv-732 <br><br> JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Keith Casey ("Casey") files this Original Complaint against Marathon Petroleum Company LP ("Marathon"), and in support thereof, states as follows:

### I.   PRELIMINARY STATEMENT

1.   In October 2018, Marathon acquired Andeavor for $23.3 billion, in what Marathon's Chairman and CEO Gary Heminger described as "a significant milestone in" the Company's 130-year history. To secure the requisite shareholder approval of this milestone merger, Marathon and Andeavor made material misrepresentations to persuade their shareholders that key Andeavor employees would be fully incentivized to work tirelessly through the merger's closing toward the combined company's long-term goals. For example, on July 20, 2018, Marathon filed a S-4 Registration Statement with the Securities and Exchange Commission ("SEC"), wherein Marathon represented that "Eligible Andeavor employees . . . will receive payment of a 2018 annual cash performance bonus . . . ***for the full period*** in accordance with the performance criteria and bonus opportunities established by Andeavor for the 2018 bonuses." With respect to named executive officers, like Casey, the S-4 also included a calculation of exit compensation based on a full year non-prorated bonus. Similarly, Marathon

1

and Andeavor unequivocally represented to key employees (including Executive Vice President Keith Casey) that they would receive their *full non-prorated* 2018 ICP bonus:

> You are eligible for a full 2018 bonus (non-prorated) based on final year-end performance

2. Casey relied on Marathon's and Andeavor's promise to pay full non-prorated 2018 bonuses to rally his team to "finish strong." After Casey and other key employees far exceeded their performance criteria and shareholders approved the merger, Marathon revealed that it had no intention of living up to its promise of paying eligible employees, including Casey, their full non-prorated 2018 ICP bonuses. Casey now sues Marathon for breach of contract and fraud, and seeks payment of the portion of his 2018 non-prorated bonus which Marathon has not paid, exemplary damages, attorneys' fees, and costs.

3. As a matter of principle, Marathon should not be permitted to profit from its misrepresentations to Casey and other employees, the SEC, and shareholders. Casey recognizes that he was amply compensated for his substantial contributions to Andeavor and the success of the merger. Therefore, if Casey prevails in this lawsuit, he hereby commits to pay all net proceeds (after payment of attorneys' fees, litigation expenses, and costs) to charity.

## II. PARTIES

4. Plaintiff Keith Casey is an individual domiciled in Bexar County, Texas.

5. Defendant Marathon Petroleum Corporation is a limited partnership organized under the laws of Delaware and has a principal place of business in Ohio. Marathon may be served through its registered agent for service of process, C T Corporation System, at 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136 USA.

### III. JURISDICTION AND VENUE

6. This Court has diversity jurisdiction over the subject matter of this action under 28 U.S.C. § 1332. The amount in dispute exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and attorneys' fees. In addition, Casey and Marathon are citizens of different states.

7. Venue is proper pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### V. FACTUAL ALLEGATIONS

8. Casey was a longtime employee of Andeavor, and its predecessor company, Tesoro Corporation. In early 2018, Casey served as Andeavor's Executive Vice President of Commercial and Value Chain, where he was responsible for maximizing value capture across all commercial activities and leading the optimization and supply chain management functions.

9. As Executive Vice President of Commercial and Value Chain, Casey was eligible for Andeavor's annual Incentive Compensation Program ("ICP"), which was designed to:

> (a) drive a performance-oriented culture by providing a market-competitive, incentive pay opportunity that recognizes and rewards employees based on collective, measurable contributions that deliver value;
>
> (b) motivate employees to achieve year-over-year incremental improvements to the organization at both the corporate and business unit level; and
>
> (c) recognize and meaningfully reward high performers.

10. According to the written ICP Program, ICP payouts are based on three components: (a) corporate-wide results; (b) business unit results; and (c) individual employee performance. After these components are ascertained for a particular year, ICP bonuses are calculated using the following strict formula:

> Incentive-Eligible Earnings X Incentive Target % X Final Scorecard Result % X Individual Performance Multiplier

11.     The ICP Program also states that "[e]mployees who separate from service and meet the eligibility requirements for Terminated employees . . . will be calculated using the formula above; however, Incentive Eligible Earnings will be what is received through the last paycheck." However, the ICP Program expressly allows for exceptions to this rule as long as they are approved "by the Company's senior officer with oversight of compensation matters."

12.     In April 2018, Marathon and Andeavor entered into a definitive merger agreement under which Marathon would acquire all of Andeavor's outstanding shares, representing a total equity value of $23.3 billion and a total enterprise value of $35.6 billion. The board of directors for both companies unanimously approved the merger, and expected to close in the second half of 2018. However, before the merger could close, Marathon and Andeavor first needed to persuade shareholders to vote for approval.

13.     As is often the case in mergers, Andeavor's employees were distracted because their jobs would likely be eliminated after the merger closed. Marathon and Andeavor feared that job apprehension amongst Andeavor's employees could jeopardize the merger. Therefore, to ensure that Andeavor employees would be fully incentivized to work tirelessly through the merger's closing toward the combined company's long-term goals, Andeavor and Marathon promised all eligible employees (including Casey) that they would not prorate their 2018 ICP bonuses. Indeed, Andeavor and Marathon provided Casey and other eligible employees with Executive Severance & Benefit Treatment Guides, which unequivocally state, "You are eligible for ***a full 2018 bonus (non-prorated***) based on final year-end performance." (emphasis added).

14.     In addition, Marathon provided Casey and other employees with 2018 Incentive Compensation Statements, which also clearly stated that they would receive the full, non-

4

prorated 2018 ICP bonus. Further still, Marathon represented to Casey and other employees that it would pay them their full non-prorated bonuses in numerous calculations of their change-in-control payments upon which Casey and other employees based their decisions regarding their separations.

15. Notably, on July 20, 2018, to calm any shareholder concerns that apprehension amongst Andeavor's employees would jeopardize the merger, Marathon filed a form S-4 Registration Statement with the SEC, wherein it stated:

> Eligible Andeavor employees, including our executive officers . . . will receive payment of a 2018 annual cash performance bonus based on actual achievement of performance conditions *for the full period* in accordance with the performance criteria and bonus opportunities established by Andeavor for the 2018 bonuses. Such bonuses will be paid by [Marathon] . . . to bonus eligible employees who remain employed through December 31, 2018 (unless earlier terminated without cause, provided that this does not result in duplication of benefits.

(emphasis added). The "full period" approach is consistent with the application of the ICP to named executive officers such as Casey. With respect to named executive officers, the S-4 provided that they shall be entitled to the full year cash performance if they "remained employed through December 31, 2018, irrespective of a later termination of employment, or if the named executive officer is terminated without cause." By virtue of their inclusion in the registration statement, shareholders relied upon these representations on September 24, 2018 in voting to approve the merger.

16. These documents and representations were not the only conduct establishing Marathon's binding commitments regarding the ICP bonus. Few, if any, executives at Andeavor were more familiar with the ICP and its historical application than Casey. For years, Casey worked closely with Andeavor's CEO and Executive Committee in connection with the ICP's administration. As such, through the months leading up to the merger's closing, Casey was

pointed in his questions about the application of the ICP to Andeavor employees terminated in the change of control, because he wanted to be certain there was no ambiguity. As in the SEC filings and the documents referenced above, Marathon and Andeavor executives made it clear to Casey and others that no such ambiguity existed—Marathon repeatedly confirmed that it would pay the full non-prorated 2018 ICP bonus to all employees including those whose employment terminated without cause in connection with the change in control.

17. In particular, at an Executive Committee meeting in September 2018, Fiona Laird—then Andeavor's Senior Vice President of Human Resources and now Marathon's Chief Human Resources Officer—specifically assured Casey and others that Marathon had committed to paying the full non-prorated bonus. In that meeting, Ms. Laird was seated at the table alongside Greg Goff, now Marathon's Executive Vice Chairman, and she emphasized that both she and Mr. Goff would be in leadership at Marathon post-closing to ensure that all commitments would be kept.

18. In addition, during Casey's last week of work at Andeavor, he met with Louis Rubiola, who was then the Vice President of Finance in charge of merger integration for Casey's business unit (and currently Marathon's Vice President of Business Planning and Analysis). Casey specifically reviewed with Mr. Rubiola Andeavor's performance through September 2018 in the context of calculating the ICP payments to Andeavor employees. In this conversation, Mr. Rubiola expressed his clear understanding that Marathon was committed to pay the full non-prorated ICP bonus to Andeavor employees, regardless of whether their employment continued through the end of the year or terminated in advance.

19. Andeavor and Marathon made the commitment to pay the full non-prorated ICP bonuses with the clear intent of inducing reliance by Casey and other Andeavor employees.

Casey relied on this commitment personally as a factor in agreeing to the terms of his separation under the change in control. After all, this commitment was expressed repeatedly in calculations of Casey's separation payments, determining the analysis of his compensation under I.R.C. § 280G. Importantly, these calculations including the full non-prorated ICP bonus, were used in determining the length of Casey's non-compete agreement. Even more important to Casey, Andeavor's and Marathon's representations concerning the ICP bonus were intended to, and did, induce Casey to assure his direct reports, and their direct reports, that they could rely on Marathon's promise of a full non-prorated bonus. Of course, Marathon had a business purpose in promising full non-prorated bonuses: to ensure continuity and the continued success of Andeavor's businesses following the merger.

20. Based, in part, on Andeavor's and Marathon's representations that it would pay full 2018 non-prorated bonuses, Casey and other employees exceeded their performance expectations and signed separation, severance, and non-compete agreements.

21. On or about October 3, 2018, just one week after getting the greenlight from their shareholders, Andeavor and Marathon closed on their multi-billion merger. Upon closing, Andeavor ceased to exist and its common stock discontinued trading on the New York Stock Exchange. Moreover, upon closing, Marathon assumed Andeavor's contractual obligations and common law liabilities.

22. On or about October 3, 2018, Casey was involuntarily terminated by Marathon without cause.

23. On March 5, 2019, Marathon paid Casey and other employees their 2018 ICP bonuses but prorated based on their last day of employment. Casey has repeatedly demanded that Marathon fulfill its promise to pay full 2018 non-prorated bonuses. Marathon refuses.

## V.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

24.     Casey incorporates by reference all the allegations made in the preceding paragraphs, as if fully set forth herein.

25.     Casey and Marathon entered into a valid and enforceable agreement, wherein Marathon agreed to pay Casey his full 2018 non-prorated bonus.

26.     Casey fully performed his contractual obligations under his agreement with Marathon.

27.     Marathon breached its agreement with Casey by refusing to pay him his full 2018 non-prorated bonus.

28.     Marathon's breach caused injury to Casey, which resulted in actual damages in an amount to be proven at trial.

### SECOND CAUSE OF ACTION: EQUITABLE RELIEF (SPECIFIC PERFORMANCE)

29.     Casey incorporates by reference all the allegations made in the preceding paragraphs, as if fully set forth herein.

30.     Casey seeks the equitable remedy of specific performance of his agreement with Marathon—namely, that Marathon pay him his full 2018 non-prorated ICP bonus. Specific performance is an appropriate remedy for breach of contract.

31.     Casey fully performed his obligations in his agreement with Marathon.

### THIRD CAUSE OF ACTION: FRAUD

32.     Casey incorporates by reference all the allegations made in the preceding paragraphs, as if fully set forth herein.

33. Marathon made misrepresentations to Casey that it would pay him his full 2018 non-prorated ICP bonus.

34. Marathon made the misrepresentations to Casey with the knowledge of their falsity or with reckless disregard of the truth.

35. Marathon made the misrepresentations to Casey with the intent that Casey would rely on them.

36. Casey relied on Marathon's misrepresentations to his detriment and to the detriment of other employees.

37. Marathon's misrepresentations directly and proximately caused injury to Casey, which resulted in actual damages. As a result, Marathon is liable for actual damages.

38. Casey is entitled to exemplary damages because Marathon acted intentionally, with fraud and malice.

## VII.   ATTORNEYS' FEES AND COSTS

39. Casey incorporates by reference all the allegations made in the preceding paragraphs, as if fully set forth herein.

40. Casey seeks an award of all reasonable and necessary attorneys' fees and costs under any and all applicable statutory and common law provisions, in addition to any other relief and actual and special damages requested herein.

## VIII.   JURY DEMAND

41. Casey demands a trial by jury.

## IX.   PRAYER

42. Casey prays for judgment against Marathon as follows:

(a) actual damages;

(b) equitable relief (specific performance);

(c) consequential damages;

(d) exemplary damages;

(e) all costs of court;

(f) attorneys' fees pursuant to any and all applicable laws;

(g) pre-judgment and post-judgment interest as provided by law; and

(h) any and all further relief, both in law and equity, to which Casey may be deemed justly entitled.

        Respectfully submitted,

        /s/ Lawrence Morales II
        LAWRENCE MORALES II
        State Bar No. 24051077
        ALLISON S. HARTRY
        State Bar No. 24083149
        **THE MORALES FIRM, P.C.**
        6243 IH-10 West, Suite 132
        San Antonio, Texas 78201
        Telephone No. (210) 225-0811
        Facsimile No. (210) 225-0821
        lawrence@themoralesfirm.com
        ahartry@themoralesfirm.com

        ***ATTORNEYS FOR PLAINTIFF***